UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60554-CIV-COHN/SELTZER

DOUGLAS RUBINS and LAURA J. (RUBINS) DUKAS,

    Plaintiffs,

v.

SALLY SUE (RUBINS) NORIEGA,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment [DE 64]. The Court has considered the Motion, the parties' related submissions, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

This case arises out of a state probate matter involving Plaintiffs Douglas Rubins and ("Plaintiff Rubins") Laura J. (Rubins) Dukas ("Plaintiff Dukas") and their sister, Defendant Sally Sue (Rubins) Noriega. The parties are the children of Alfred E. Rubins, who passed away, testate, on March 18, 2006. See DE 65 ¶ 2. The Last Will and Testament ("Will"), dated March 3, 2006, appoints Defendant as the "Personal Representative." See Ex. 1 to DE 65. The Will also indicates that Defendant is to receive 40% of the assets, consisting primarily of real property located in Brevard County. See id.

On May 26, 2006, Defendant filed a Petition for Administration with the Circuit Court, in and for Brevard County, Florida, Probate Division ("Probate Court"). In order

to validate the Will, an Affidavit of Witness to Will and Oath of Witness to Will were filed on July 23, 2006 and July 24, 2006, respectively. See Exs. 3, 4 to DE 65. On August 1, 2006, the Probate Court entered an Order Admitting Will to Probate and Appointing Personal Representative, which appointed Defendant as the Personal Representative. See Ex. 5 to DE 65. Formal Notice was provided to the Plaintiffs and they were provided three months after the date of service to file "any objection that challenges the validity of the will (or any codicil), the qualifications of the Personal Representative, the venue, or the jurisdiction of the Court, or those objections are forever barred." Ex 7 to DE 65.

On September 25, 2006, Plaintiff Dukas filed a Caveat by Interested Person, which was signed on July 11, 2006. See Ex. 2 to DE 65. On November 13, 2006, Plaintiff Rubins filed an Objection Challenging the "Surprise" Last Will & Testament ("Objection"). Ex. 9 to DE 65. In his Objection, Plaintiff Rubins alleged that the Will was a "[f]raud" and that Alfred E. Rubins was too sick and incoherent to participate in the legal process at the time the Will was executed. Id. at 1. Plaintiff Rubins also questioned the authenticity of the signature on the Will and alleged that Defendant had destroyed the "'True Prior' Last Will" of their father. Id. at 2. Although there is no order from the Probate Court addressing these objections, "the Probate Court did not vacate the Letters of Administration nor did it invalidate the Last Will and Testament." DE 65 ¶ 8.

On March 12, 2008, Defendant filed a Petition for Order Authorizing Sale of Real Property ("Petition"). Ex. 10 to DE 65. Each Plaintiff filed a Consent and Waiver of Notice, representing that each Plaintiff waived a hearing on the Petition and consented

to an order granting the relief requested therein. Ex. 11 to DE 65. On March 14, 2008, the Probate Court granted the Petition and entered an Order Authorizing Sale of Real Property. Ex. 12 to DE 65. That order stated that "[a]ll sales proceeds shall be held in the Trust Account of the attorney for the Personal Representative until further Order of this Court." Id. On April 17, 2008, the Probate Court entered an Order Determining Homestead Status of Real Property. Ex. 15 to De 65. That order found that Alfred E. Rubins "died testate" and his "homestead is validly devised." Id. The order then set forth the allocation for each beneficiary in accordance with the Will, which included providing Defendant with a 40% share of the proceeds, and providing each Plaintiff with a 15% share. Id. According to the Defendant, "Plaintiffs had an opportunity to seek relief from the State Court, including a hearing on the matter or an interlocutory appeal. However, the Florida Court file is devoid of any such documentation." DE 65 ¶ 11.

On January 9, 2009, Plaintiffs originally filed their Complaint in the Northern District of Texas.[1] The Complaint raises similar claims to those raised in Plaintiff Rubins' Objection, including alleging that Defendant created a "surprise will" for her own personal gain. DE 1 ¶¶ 3-4. The Complaint further alleges that the decedent was "not of sound mind" at the time the "surprise will" was created. Id. ¶ 9. In addition, although not named as a defendant, the Complaint alleges that the Probate Court violated Plaintiffs' due process because, among other things, it did not hold a hearing on Plaintiff Rubins' Objection.

The Complaint requests that the Will, dated March 3, 2006, "be stricken." Id. ¶

---

[1] The case was transferred to this Court on April 15, 2009. See DE 14.

43(b). The Complaint asks this Court to construct a new will based on a prior will and testament which existed in May 2005. Id. ¶ 43(c). Plaintiffs seek to have this Court re-distribute the proceeds from the home sale in accordance with this newly constructed will. Id. ¶ 43(d).

## II. LEGAL STANDARD

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When deciding a motion for summary judgment, a district court must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and must resolve all reasonable doubts against the moving party." Corbitt v. Home Depot U.S.A., 573 F.3d 1223, 1238 (11th Cir. 2009). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine

issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

#### 1.    The Probate Exception to Federal Jurisdiction

The long-standing probate exception to federal jurisdiction requires that the Complaint in this action be dismissed. The Supreme Court has found that "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311-12 (2006). In other words, "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." Id. at 311. Over sixty years ago, the Supreme Court explained the contours of the probate exception to federal jurisdiction as follows:

> Federal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

5

Markham v. Allen, 326 U.S. 490, 494 (1946).

Relying on the probate exception, Defendant argues as follows:

> In the instant action, Plaintiffs seek nothing more than to re-hash the same arguments that were presented to the State Probate Court. Plaintiffs are seeking to have this Court re-devise the decedent's estate (*the res*) as they deem proper. To do so, would require this Court to evaluate the State Probate Court's decision and reverse or void that court's findings.

DE 64 at 6. The Court agrees that Plaintiffs' claims constitute "fights over a property . . . in the [probate] court's control." Struck v. Cook County Public Guardian, 508 F.3d 858, 860 (7th Cir. 2007). Accordingly, the Complaint must be dismissed.

### 2. The Rooker Feldman Doctrine

The Defendant also argues that the Complaint should be dismissed based on the Rooker-Feldman doctrine. "The Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000) (*en banc*); see also Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); Nicholson v. Shafe, 558 F.3d 1266, 1274 (11th Cir. 2009). Simply put, the Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).

The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 n.16

(1983); Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997). A federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring). Here, the claims raised in the Complaint call on this Court to review the rulings of the Probate Court. Therefore, the Rooker-Feldman doctrine prevents this Court from considering claims which should have been raised in state appellate proceedings.

## IV. CONCLUSION

Based on the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [DE 64] is **GRANTED**. The Court shall enter a separate judgment order consistent with the above ruling.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 19th day of January, 2010.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF